UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CURTIS JOHNSON, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 12-0960-CV-W-BP-P |
| LARRY DENNY, | ) |
|       Respondent. | ) |

**OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 convictions and sentences for one count of first degree assault with serious bodily injury and one count of armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri. Petitioner raises four (4) grounds for relief, asserting that: (1) his trial counsel was ineffective for failing to call key witnesses to refute his connection with the shooting; (2) trial counsel was ineffective for not objecting to evidence submitted about a white Cadillac, allegedly driven by the petitioner, which was found near the residence of a passenger in the vehicle; (3) his Confrontation Clause rights were violated when a witness would not testify after the prosecutor stated in his opening statement that evidence from this witness would be introduced about petitioner admitting to being the shooter; and (4) trial counsel was ineffective in failing to introduce evidence of another suspect who was stopped fleeing from the scene. Respondent contends that Grounds 1, 2, and 3 are procedurally barred and Ground 4 lacks sufficient evidence to be admissible in state court.

# SUMMARY OF THE FACTS

The Missouri Court of Appeals summarized the facts as follows:

> Mr. Johnson was convicted of first-degree assault and armed criminal action. At a jury trial, the State adduced testimony that Mr. Johnson shot Ms. Melissa Weekly at a gas station, causing her serious bodily injury. The shooting occurred after Ms. Weekly and her friends left a club and went to a nearby gas station. Other individuals who had been at the club, including Mr. Johnson, also went to the gas station. Ms. Weekly and her friends drank alcohol that night, and one of them, Ms. Jasmine Rankins, admitted to consuming an illegal drug. After an argument ensued at the gas station near a white Cadillac with temporary tags, Ms. Weekly noticed that its driver, Mr. Johnson, was pointing a gun out of the window. Mr. Johnson and Ms. Weekly were acquaintances. As Ms. Weekly returned to Ms. Rankins's car, someone in the white Cadillac shot Ms. Weekly twice in the legs. She heard additional shots as she watched the Cadillac leave the gas station and drive onto a nearby highway. She did not see anybody else with a gun that night.
>
> The police arrived at the scene within minutes. The investigating officer was told that the shooter had left the scene, headed northbound onto a nearby highway. People began leaving in cars as the police arrived, and some people stayed. Despite all of the chaos, no one at the scene identified a shooter other than Mr. Johnson. Ms. Weekly told the officer that Mr. Johnson had shot her and that he was driving a white four-door Cadillac with temporary tags. Ms. Tamara Prewitt, Mr. Johnson's children's mother, was also at the gas station and told the officer that Mr. Johnson was the shooter. Ms. Prewitt's written statement was admitted into evidence. Additionally, Ms. Rankins and a detective testified that Ms. Rankins identified Mr. Johnson as the shooter in the white car.
>
> Investigation of the scene revealed four shell casings by the gas pump where the shooting occurred and bullets inside Ms. Rankins's car. The four casings all came from the same gun. Further investigation that morning revealed that a white Cadillac with temporary tags was in the parking lot where one of the witnesses who had been a passenger in the white Cadillac lived. The Cadillac's owners claimed that they allowed a young man to use their car to get groceries for them. Mr. Johnson was apprehended

> weeks later. Ms. Weekly also testified that Mr. Johnson threatened her previously, and subsequent to the shooting, he told her over the telephone that she would learn how to keep her mouth shut rolling around in a wheelchair. Ms. Weekly and Ms. Rankins also testified that he threatened Ms. Weekly during pre-trial hearing.
>
> We affirmed Mr. Johnson's convictions and sentences on direct appeal. *State v. Johnson*, 295 S.W.3d 904 (Mo. App. W.D. 2009). Mr. Johnson filed a *pro se* post-conviction relief motion, and appointed counsel filed an amended motion. Mr. Johnson claimed that trial counsel was ineffective for failing to introduce evidence that would have supported his theory of the case and thereby could have created reasonable doubt in the minds of jurors. Specifically, Mr. Johnson alleged that counsel's performance was deficient because he failed to present the following evidence: (1) the police chased a car, matching the description of the shooter's car, from the scene; (2) stop sticks had to be used to stop the vehicle that was traveling at speeds [in] excess of 100 miles; (3) the driver after being placed into custody admitted to being at the same club and hearing shots; (4) the police found a gun and live ammunition in the car; and (5) the driver claimed that an acquaintance had placed the gun and ammunition in his car. The motion court granted an evidentiary hearing, and trial counsel testified that he made a strategic decision not to present the evidence. The motion court denied relief, concluding that trial counsel's decision not to present the evidence was based on reasonable trial strategy. Mr. Johnson appeals.

(Respondent's Exhibit J, pp. 1-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1]

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State

-3-

Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**GROUNDS 1, 2, AND 3**

Petitioner procedurally defaulted Ground 1 by failing to raise it in his amended Rule 29.15 motion for post-conviction relief. Petitioner procedurally defaulted Ground 2 by failing to raise it in his appeal from denial of post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15. See Doc. No. 8 (Respondent's Exhibit H). See Lowe-Bey v. Groose, 28 F.3d 816, 818-20 (8th Cir.), cert. denied, 513 U.S. 1061 (1994) (claims presented in a post-conviction motion but not presented on appeal therefrom are procedurally defaulted). Petitioner procedurally defaulted Ground 3 by failing to raise the same claim in the state courts that he is raising in this Court.[2] In the state courts, petitioner claimed that the trial court should have granted a mistrial when Mr. Taylor refused to testify. In this Court, petitioner claims that his Confrontation Clause rights were violated by non-existent testimony from officers about Mr. Taylor's statement to the police. Doc. No. 8, p. 20.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F3d 1371, 1381 (8th Cir. 1995),

---

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[2] "In order to present a habeas claim to the state court, a prisoner must 'fairly represent' not only the facts, but also the substance of his federal habeas corpus claim. . . . Presenting a claim that is merely similar to the federal habeas corpus claim is not sufficient to satisfy the fairly presented requirement." Barrett v. Acevedo, 169 F.3d 1155, 1161-62 (8th Cir. 1999) (citing Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996), cert. denied, 517 U.S. 1215 (1996)), cert. denied, 528 U.S. 846 (1999).

cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id.

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

If petitioner contends that ineffective assistance of Rule 29.15 appellate counsel caused his state procedural default of Ground 2, claims of ineffective assistance of counsel must have been independently presented in a timely manner to the state courts in order to be used to show the alleged cause for state procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Because petitioner failed properly to present the alleged ineffectiveness of Rule 29.15 appellate counsel concerning Ground 2 to the state courts, he has failed to demonstrate legally sufficient cause for his default. Although the United States Supreme Court recognized that ineffective assistance of post-conviction counsel could constitute cause for the failure to raise a claim in a post-conviction motion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), Martinez did not change the rule that ineffective assistance of post-conviction appellate counsel not constitute cause for state procedural default unless it has been presented in the state courts. Arnold v. Dormire, 675 F. 3d 1082, 1087 (8th Cir. 2012).

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted Ground 2 is not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent

of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, petitioner's Ground 2 is procedurally defaulted and will be denied.

Because petitioner contends that ineffective assistance of post-conviction counsel caused his procedural default of Ground 1, this Court must determine whether Ground 1 was a substantial claim and that post-conviction counsel was ineffective for deciding not to call the two witnesses petitioner contends would have testified that he was not the shooter. (Doc. No. 8, pp. 12-15). Using the standard set forth in Martinez, the petitioner is unable demonstrate that Ground 1 was a substantial claim in that neither of petitioner's two witnesses could identify the shooter, but merely could state that petitioner was not the shooter. Given that three other unbiased witnesses, two of whom knew petitioner well, could identify petitioner as the shooter, the proposed testimony of petitioner's two witnesses was relatively weak and would not create a reasonable probability of a different result in light of the strength of the state's case.

During the post conviction hearing, trial counsel was asked why he did not present the witnesses. Unless trial counsel's decision is found to have "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him, then trial counsel's decisions will strongly be considered as competent. Strickland v. Washington, 466 U.S. 668 (1984). Here, trial counsel made a strategic decision to avoid questioning the two witnesses based on his trial strategy to show that the other witnesses were intoxicated and did not get a good look at the shooter. Petitioner's facts do not overcome the presumption that trial counsel made a reasonable decision. Furthermore, petitioner is not able to demonstrate prejudice for the reasons discussed above regarding the relative weakness of petitioner's two witnesses compared to the

-6-

state's witnesses and other evidence. As a result, petitioner's Ground 1 is procedurally defaulted and will be denied.

As to Ground 3, petitioner's Confrontation Clause claim in this Court is based on the theory that Mr. Taylor's refusal to testify about petitioner's admission to him of guilt (even after the state court granted him immunity) required the state to offer evidence of Taylor's testimony through the detective who took Taylor's statement. Although the state had indicated in opening statements that Mr. Taylor was expected to testify that petitioner was the shooter and that petitioner had admitted to Taylor that he was the shooter, after Taylor refused to testify, the state did not call either Taylor or the detective who interviewed Taylor to the stand to testify. When petitioner requested a mistrial based on the opening statement about petitioner's admission of guilt, the state responded that the opening statements were made in good faith and that, although some type of curative instruction would be appropriate, a mistrial was not required. The state court refused to declare a mistrial, but the jury was instructed that any comments made in opening statements were not evidence.

Petitioner offers no basis for his new claim of a Confrontation Clause violation. This claim is refuted by the record in that petitioner's trial counsel anticipated that Terry Taylor would testify. Respondent's Exhibit A, p. 355. Because Taylor did not testify, petitioner cannot establish a Confrontation Clause violation. Furthermore, there is nothing in the record that suggests Taylor's statement to the police was false or that the state or the police knew that his statements were false. After he was granted immunity, Terry Taylor did not have a reason not to testify. Because the state did not opt to call the detective to testify, no Confrontation Clause violation existed as to the detective either.

-7-

As to the claim presented to the state court, petitioner alleged that the trial court should have granted a mistrial when Mr. Taylor refused to testify. Doc. No. 8, p. 20. The Missouri Court of Appeals' denial of that claim reflected that petitioner made no claim of "bad faith" regarding the opening statement and that, normally, if expected evidence is referenced to in good faith and ultimately not produced or is excluded, this is not reversible error. Respondent's Exhibit E, p. 6. The state appellate court found no support for irreparable prejudice under any basis alleged by the petitioner. Thus, the state court found that a mistrial was not warranted and that the state did not act in bad faith because, "Mr. Johnson had the opportunity to challenge the State's version of Mr. Taylor's testimony in his own opening, the jury was properly instructed that opening statements are not evidence, the proposed testimony was not referred to again during the trial, and the state presented strong evidence of guilt." Respondent's Exhibit, p. 9.

The state court's failure to declare a mistrial based on the state's good faith opening statement does not violate any established federal law; therefore, the decision of the state court is not contrary to or an unreasonable application of established federal law. 28 U.S.C. § 2254 (d)(2).

## GROUND 4

In Ground 4, petitioner contends that his trial counsel was ineffective by failing to introduce evidence of another suspect that was caught fleeing the scene. Doc. No. 1, p. 8a. Respondent contends that the evidence surrounding this accusation was insufficient to be admissible in court. Doc. No. 8, p. 5. The Missouri Court of Appeals denied petitioner's claim of ineffective assistance as follows:

> Mr. Johnson argues that the motion court clearly erred in

-8-

denying relief because he established that trial counsel's performance fell below the level of a reasonably competent attorney for failing to present evidence "that the police pursued Reginal Johnson from the scene the night of the shooting" and that there is a reasonable probability that had the jury heard evidence, Mr. Johnson, the movant, would have been acquitted. To succeed on an ineffective assistance of counsel claim, a movant must demonstrate that trial counsel's performance was deficient and the deficiency prejudiced him. *Coleman* v. *State*, 256 S.W.3d 151, 154 (Mo. App. W.D. 2008). We presume trial counsel's performance reflects sound trial strategy. *Id.*

At the post-conviction relief hearing, trial counsel testified that the witnesses at the scene told the police that the shooter had been in a white, four-door Cadillac with a temporary tag. The defense theory was that because the situation was so chaotic and the witnesses were intoxicated, "no one got a real good look" at the shooter and only assumed that it was Mr. Johnson. Trial counsel admitted knowing about the police report describing a car chase that night on the nearby highway involving a gold Cadillac and that the driver was reported as being at the club.

Trial counsel stated that the defense considered using the report but did not offer it because it excluded the gun found in the car from matching the gun fired at the gas station and that he believed that the exclusion would bolster the State's case. He was concerned that the jury "was going to look at that like, well, that means that car didn't do it, so that means the defendant's car was the one that did do it." He further explained:

> I was concerned that if we were trying to point the finger at Reginal Johnson, but the State – if we introduced that evidence, the State would be able to say he's excluded based on the fact that the gun that was found in his car did not actually fire the rounds that his Melissa Weekly. I was concerned that that was just going to bolster the State's case that Reginal Johnson was not the person who actually did the shooting, and I didn't want to highlight the fact that his gun did not actually do the shooting.

Trial counsel believed the evidence would have been more beneficial to the State, despite the facts that the gun fired at the

-9-

scene had not been recovered and that "no evidence at trial definitely link[ed] any white Cadillac to Mr. Johnson." Trial counsel claimed that although he could have argued that Mr. Reginal Johnson discarded the gun that was used at the scene, he believed that it would have bolstered the State's case because he did not have anything substantive to support it. The motion court found that trial counsel did not present the evidence because he believed it could "easily be refuted by the prosecution" and then found that this determination was "not an unreasonable trial strategy."

Mr. Johnson argues that trial counsel's decision was not based on reasonable trial strategy because the evidence "would not have conflicted with his theory of defense"; that the argument that Mr. Reginal Johnson discarded the gun during the chase was viable because the gun used in the shooting was not introduced; and that the evidence was relevant to show someone else shot Ms. Weekly.

Because trial counsel is given great discretion to present evidence to the jury, the failure to present certain evidence based on reasonable trial strategy cannot support a finding of ineffectiveness. *Id.* at 156. Reasonableness is determined by considering "the circumstances of the case, defense, and trial happenings." *Id.* "Counsel's choice of one reasonable strategy over another is not ineffective assistance." *Glaviano*, 298 S.W.3d at 117.

Here, trial counsel's defense theory was that Mr. Johnson was misidentified and therefore someone else shot Ms. Weekly. Trial counsel presented the defense by arguing that the witnesses could not have identified the shooter because the evidence demonstrated that the shooting was a chaotic scene and that the witnesses were intoxicated. At trial, it was undisputed that the witnesses told police the shooter was in a white car and that type of gun used to shoot Ms. Weekly fired .380 bullets.

In light of the circumstances, although "someone else did it" was the defense, presenting evidence of a specific person driving a different color car but the same model and containing a different gun that the one fired at the scene would not have supported that defense. First, the only gold or tan colored car identified at the scene that was near the gas pumps was a Monte Carlo, which belonged to someone that the witnesses knew. Second, no one at the scene identified a different shooter. Third, the witnesses testified that the shooter was in a white car. Finally, after an

-10-

> investigation, with a forensic test excluding the gun and ammunition found in the gold Cadillac as the gun "that actually fired the shots that shot Melissa Weekly," the police did not charge Mr. Reginal Johnson as the shooter. In light of the defense, the circumstances of the case, and the events at trial, we cannot conclude that the trial court clearly erred in finding that trial counsel's omission was based on reasonable strategy. Consequently, Mr. Johnson's sole point is denied.

(Respondents Exhibit J, pp. 4-7)(footnotes omitted).

In order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

In applying the standard articulated in Strickland, the Missouri Court of Appeals, Western District, found that petitioner's trial counsel was not ineffective because petitioner failed to demonstrate that counsel's failure to produce evidence of another vehicle being chased from the scene was not a reasonable trial strategy. Additionally, plaintiff failed to establish any prejudice

-11-

from his trial counsel's choice of defense theory to present evidence of misidentification. Respondent's Exhibit J, p. 6. The Missouri Court of Appeals, Western District, found that petitioner's trial counsel made a reasonable strategic decision not to produce evidence of another suspect who was stopped fleeing the scene, and such strategic decisions are virtually unchallengeable, especially under 28 U.S.C. § 2254. Strickland, 466 U.S. at 690-91; Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009); see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury.").

Furthermore, petitioner failed to demonstrate prejudice because there was no reasonable probability that the outcome of the trial would have been different, in that the state court recognized that trial counsel did not produce the evidence "because he believed it could 'easily be refuted by the prosecution.'" Respondent's Exhibit J, p. 5. Because the state court's determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), the argument for Ground 4 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004).

Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

      /s/ Beth Phillips
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: November 26, 2012.

-13-

Case 4:12-cv-00960-BP   Document 11   Filed 11/26/12   Page 13 of 13